ORIGINAL

FILED
SEP 1 8 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SYSTEM PLANNING CORPORATION<br>Suite 3000<br>1000 Wilson Boulevard<br>Arlington, VA 22209-3911<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 07-678 C |

**COMPLAINT**

Plaintiff System Planning Corporation ("SPC"), by its undersigned counsel, respectfully submits its Complaint against Defendant United States of America ("Government" or "United States" or "Air Force") as a result of conduct by the United States Air Force and alleges and states as follows in support of its claim.

**PARTIES**

1. Plaintiff System Planning Corporation ("SPC") is a corporation, with its principal office located at Suite 3000, 1000 Wilson Boulevard, Arlington, Virginia 22209-3911.

2. Defendant United States is responsible for a United States government contract issued by the United States Air Force Material Command, Electronics Systems Center, and for the Government's failure to perform its obligations under the contract.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this action and venue is proper in this Court pursuant to 41 U.S.C. §601, et seq., the Contract Disputes Act of 1978, as amended. In

particular, this Court has jurisdiction and venue is proper pursuant to 41 U.S.C. §609(a)(1), which provides that SPC, as a government contractor, can bring an action directly on a claim in the United States Court of Federal Claims, notwithstanding any contract provision, regulation, or rule of law to the contrary.

**FACTS**

4. On or about March 11, 1993, (later modified to April 16, 1993), the government awarded SPC and SPC entered into Contract No. F19628-92-D-0011 with the United States Air Force ("USAF") to provide, among other things, a security system, to include planning, designing, acquisition and installation of equipment, under the Advanced Entry Control System Program ("AECS").

5. Contract No. F19628-92-D-0011 (hereinafter the "AECS Contract') provides that "[t]he AECS . . . control[s] entry and exit of authorized personnel to local and remote secure areas and alert[s] security monitors of attempted unauthorized entry."

6. In accordance with the terms set forth in the AECS Contract and its implementation, SPC provided software and hardware for this security system to be installed and tested at Eglin Air Force Base in Florida and then installed and licensed to operate at Minot Air Force Base in North Dakota and at Kirtland Air Force Base in New Mexico.

7. The original AECS Contract provided that the government had the right to modify or adapt the AECS computer software, but only if the government paid a specific fee to SPC:

> Should the contractor be in danger of default, in a nonperformance posture under this contract, or discontinue [sic] the AECS software line after the system is installed at one or more bases, the Government may exercise the contract option to buy limited software data rights. This contract option is to ensure all installed sites are logistically supportable throughout the life cycle of the system. Should this option be exercised, the Government claims the following rights in addition to any other rights granted under

> federal statute or regulation. The computer software may be modified or adapted by the government to support the system over it's [sic] life cycle provided that the additional, negotiated fee, is paid for the software source code.

*See* Section H.9 of the original AECS Contract. Section B of the original AECS Contract provided that the negotiated fee the government would have to pay SPC was $820,000.

8. On or about October 21, 1997 Section H.9 of the AECS Contract was amended to, *inter alia*, provide the government the right to modify or adapt the AECS computer software, software development tools, and hardware and to install and/or operate the AECS software or proprietary hardware at installations that were not installed and licensed to operate by SPC:

> In the event the contractor is in danger of default, in a nonperformance posture under this contract (as determined by the Government), or discontinue [sic] the AECS product line, after the system is installed at one or more bases, the Government may exercise the contract option to buy limited software and hardware data rights to the AECS software and hardware. This contract option is to ensure all installed sites are logistically supportable throughout the life cycle of the system. The Government may not install or operate the software and proprietary hardware at any additional installations, other than those installed, and licensed to operate by the original contractor. Should this option be exercised, the Government claims the following rights in addition to any other rights granted under federal statute or regulation. The software and hardware may be modified or adapted by the Government to support the system over it's [sic] life cycle provided that the additional, negotiated fee, is paid for the software source code. . . .

The October 21, 1997 amendments also modified the AECS Contract to provide that the negotiated fee the government would have to pay SPC was $7,039,870. The contract is clear that (a) if the Government modifies or adapts the AECS software or hardware or (b) if the Government installs or operates the AECS software or hardware at any installations that were not installed and licensed to operate by SPC, then the government must pay SPC the negotiated fee.

9. On or about April 4, 2000, at a status and planning meeting concerning the AECS Contract, Air Force Colonel Douglas Ebner, Director of Force Protection at Electronic Security Command, described changes that would be made in the AECS software for Minot Air Force Base. Colonel Ebner said the software changes he described would not be made by SPC and the work would be funded and executed by a different means.

10. By removing SPC from the project and turning the completion of the installation of the AECS system at Minot Air Force Base over to another contractor, the Air Force prevented SPC from performing under the contract and placed SPC in a "non-performance posture."

11. On or about April 12, 2000 in an electronic mail message from Alicia Gettman, the Government Contracting Officer for the AECS Contract, to SPC's Director of Contracts, Ms. Gettman referenced changes that had been made and/or were to be made to the AECS software.

12. On or about late April or early May of 2000, SPC personnel were present at the testing of the AECS software at the Minot Air Force Base and observed that the software modifications described by Colonel Ebner had been made and those changes were not made by SPC or in consultation with SPC and were not made pursuant to any authorization or request to perform work under the AECS Contract.

13. On or about August 3, 2000 Dr. Ronald Easley, SPC's Chief Executive Officer, wrote to Ms. Gettman to express concern that "the government may have modified or adapted the AECS software, thereby triggering the requirement in Section H.9 of the contract to pay the additional, negotiated fee ($7,039,870)." Dr. Easley requested a meeting to discuss this and other issues.

14. On or about August 16, 2000, Ms. Gettman responded that the Government did not owe the $7,039,870 fee because (a) SPC had not defaulted, (b) SPC had not failed to

perform, and (c) SPC had not discontinued its AECS system, and in her view unless one of the three conditions had been met, it did not matter whether the government had modified the software:

> The Government disagrees with your assertion in the second paragraph of the referenced letter that contract clause H.9 is a requirement that can be "triggered" by the Government modifying the AECS software. Government modification of the AECS software is irrelevant as to whether contract clause H.9 has been activated and the option contained therein has been exercised. On the contrary, that particular clause is activated only if one or more of three conditions precedent occur:
>
> a. Default by SPC,
> b. Non-performance on the contract by SPC, or
> c. Discontinuation of the AECS system.

Ms. Gettman did not respond to Dr. Easley's request for a meeting.

15. On or about August 2000, SPC continued to raise its concerns about the Government's modification of SPC software and continued to request a meeting to discuss those concerns.

16. On or about August 28, 2000 Ms. Gettman responded that "whether or not the Government has modified or adapted the AECS software is irrelevant to the activation of the option" and that "the Government does not have the software source code (it is in escrow) nor have we modified or adapted either the software or the hardware."

17. Given its knowledge that the Government had, in fact, modified the AECS software, on or about September 8, 2000 SPC sent the Government an invoice for the $7,039,870 that was then due and owing under the terms of the AECS Contract.

18. On or about September 21, 2000 the Government responded and refused to pay the SPC invoice.

19. On or about October 9, 2000, pursuant to the relevant Federal Acquisition Regulations and the Contract Disputes Act of 1978, as amended, SPC submitted a claim to Ms. Gettman, the Government Contracting Officer, seeking the $7,039,870 fee that was then due and owing as the specified compensation due to SPC under the terms of the AECS Contract. SPC specifically asked that the Contracting Officer resolve the matter within sixty (60) days or, in the alternative, notify SPC of the date by which the decision will be made.

20. Based upon information and belief, SPC alleges that the Government made other modifications to the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract and as a result those modifications constitute a separate and independent basis for the Government's obligation to pay the negotiated fee specified in the AECS Contract.

21. The Government did not issue a decision on SPC's claim within sixty (60) days, but rather unilaterally extended its date for issuance of the Contracting Officer's Final Decision. The date was extended from early December, 2000 to February 13, 2001, and then to April 13, 2001. Nevertheless, no decision on SPC's claim was **ever** issued by the Contracting Officer.

22. While its claim was pending before the Contracting Officer, SPC used all means available to it to secure additional evidence and documentation concerning modifications by the Government of the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract, including filing of a Freedom of Information Act request on or about October 19, 2000.

23. On or about November 30, 2000 the Government informed SPC that the Government should be making a partial production of the documents sought by SPC on or about December 8, 2000. On or about January 16, 2001 the Government notified SPC that SPC would

get a response within four (4) to six (6) weeks. On or about March 30, 2001 the Government informed SPC that it would not produce any of the documents sought by SPC. On or about July 21, 2001 SPC appealed the Government's refusal to produce the requested documents.

24. On or about February 15, 2002, about sixteen months after SPC filed its FOIA request, the Government produced some of the documents requested by SPC, but they were redacted to such an extent that they did not provide the information SPC was seeking. SPC continued to pursue release of the documents, and on or about August 31, 2004, almost four (4) years after SPC filed its FOIA request, the Government produced a small quantity of additional responsive documents, but refused to produce at least 378 pages of documents it had identified as responsive to SPC's request. On or about September 7, 2005, the Air Force General Counsel informed SPC that its appeal of the Government's decision to withhold these responsive documents had been denied, and that no further documents would be produced in response to SPC's FOIA request.

## CAUSES OF ACTION

### COUNT I
### (Contract Claim – Modification of Software, etc. without Paying Negotiated Fee)

25. Plaintiff SPC repeats and realleges the facts asserted in paragraphs 1-24, above, as incorporated by reference and stated and alleged herein.

26. Plaintiff SPC and the United States Air Force entered into the AECS contract, which was a lawful and binding contractual obligation of both parties that resulted when the Air Force awarded the AECS Contract to SPC.

27. The AECS Contract was agreed to by both parties and the Contract provides for mutual promises and consideration – among other things, services and products to be provided by SPC and payments to be made by the Air Force.

28. SPC performed its obligations under the AECS Contract.

29. The Government engaged in conduct contrary to the terms of the AECS Contract when it modified the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract, and first failed, and then refused to pay SPC the negotiated fee specified and provided for in the AECS Contract. The Government also breached the AECS Contract when it falsely denied that it modified the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract. In addition, the Government breached the AECS Contract when it failed to disclose to SPC (and sought to conceal) that it modified computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract.

30. The Government's breach caused SPC to suffer direct, actual damages including, but not limited to, (a) the amount of the negotiated fee - the $7,039,870 that has been due and owing under the terms of the AECS Contract, and (b) the costs incurred by AECS in gathering information concealed by the Government that was relevant to establishing SPC's claim.

**COUNT II**

**(Contract Claim – Unauthorized Use of Software, etc. without Paying Negotiated Fee)**

31. Plaintiff SPC repeats and realleges the facts asserted in paragraphs 1-24 and 26-30, above, as incorporated by reference and stated and alleged herein.

32. Plaintiff SPC and the United States Air Force entered into the AECS contract, which was a lawful and binding contractual obligation of both parties that resulted when the Air Force awarded the AECS Contract to SPC.

33. The AECS Contract was agreed to by both parties and the Contract provides for mutual promises and consideration – among other things, services and product to be provided by SPC and payments to be made by the Air Force.

34. SPC performed its obligations under the AECS Contract.

35. The contract is explicit that "The Government may not install or operate the software and proprietary hardware at any additional installations, other than those installed, and licensed to operate by the original contractor."

36. Upon information and belief the Government breached the AECS Contract when it used the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract in ways and/or at locations that were not permitted by the AECS Contract. The Government also breached its obligations under the AECS Contract when it failed to disclose to SPC its unauthorized use of the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract.

37. The Government's breach caused SPC to suffer direct, actual damages, including but not limited to (a) the amount of the negotiated fee - the $7,039,870 that was then due and owing under the terms of the AECS Contract, (b) the fair market value of the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract that was misappropriated by the Government, and/or (c) the costs incurred by SPC in gathering information that was concealed by the Government that was relevant to establishing SPC's claim.

**COUNT III**
(Quantum Meruit)

38. Plaintiff SPC repeats and realleges the facts asserted in paragraphs 1-24, 26-30, and 33-37, above, as incorporated by reference and stated and alleged herein.

39. Plaintiff SPC and the United States Air Force entered in the AECS contract, which was a lawful and binding contractual obligation of both parties that resulted when the Air Force awarded the AECS Contract to SPC.

40. The Government received software, software development tools, and hardware from SPC under the AECS Contract.

41. The contract is explicit that "The software and hardware may be modified or adapted by the Government to support the system over it's [sic] life cycle provided that the additional, negotiated fee, is paid for the software source code", and that "The Government may not install or operate the software and proprietary hardware at any additional installations, other than those installed, and licensed to operate by the original contractor."

42. The Government modified, and upon information and belief made unauthorized and impermissible use of the AECS software, software development tools, and hardware supplied by SPC without paying SPC for the proprietary right to do so. This created an implied contract pursuant to which the Government became obligated in quantum meruit to pay SPC the value of the AECS software, software development tools, and hardware supplied by SPC.

43. The value of the AECS software, software development tools, hardware, and other proprietary rights that the Government misappropriated without paying SPC for the Government's use is $7,039,870, the amount that was specifically negotiated between the Government and SPC to represent that value.

44. The Government's misappropriation and the implied contract between the Government and SPC caused SPC to suffer direct, actual Quantum Meruit damages, including but not limited to the amount of the negotiated fee - the $7,039,870 that was then due and owing under the terms of the AECS Contract, or the fair market value of the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract that was misappropriated by the Government.

## RELIEF REQUESTED

WHEREFORE, Plaintiff SPC, by its undersigned counsel, respectfully requests and demands that this Court enter judgment against the Government and in favor of Plaintiff SPC:

a. Declaring that the Government breached the AECS Contract and since a date certain before October 9, 2000 the Government has owed SPC $7,039,870 under the terms of the AECS Contract.

b. Declaring that the Government breached the AECS Contract by modifying the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract without paying the negotiated fee due and owing to SPC.

c. Declaring that the Government breached the AECS Contract by using the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract in ways and/or at locations that were not permitted by the AECS Contract.

d. Declaring that the Governments' modification, unauthorized use, and misappropriation of computer software, software development tools, and/or hardware supplied by SPC entitles SPC to receive in quantum meruit, the value of the misappropriated property.

And Ordering that the Government shall pay or provide to Plaintiff SPC:

i. SPC's actual damages in an amount to be proven at trial, in an amount in equal to or in excess of $7,039,870.00,

ii. the fair market value of the computer software, software development tools, and/or hardware supplied by SPC under the terms of the AECS Contract that was misappropriated or misused by the Government,

iii. As additional damages, SPC's costs incurred in gathering information that was concealed by the Government that was relevant to establishing SPC's claims,

iv. Interest on Plaintiff SPC's damages from at least the date of the filing of the claim with the Contracting Officer in or about October 2000,

v. an award of attorneys fees and costs,

vi. such other and further relief as the Court may deem appropriate.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By F. Whitten Peters by Juli Ann Lund

F. Whitten Peters, Esq.
725 Twelfth Street, N.W.
Washington, D.C. 20005
Tel: (202) 434-5000
Fax: (202) 434-5029

Attorneys for Plaintiff System Planning Corporation

DATED: September 18, 2007